The Honorable Tom Courtway State Representative P.O. Box 56 Conway, Arkansas 72033
Dear Representative Courtway:
This letter is in response to your request for an opinion regarding the use of the County Administration of Justice Fund, which was created by Act 1256 of 1995. The particular section about which you have inquired states:
 From the fund, the county shall continue to finance the following agencies and programs which are currently funded, in whole or in part, by filing fees and/or court costs, at a funding level equal to not less than the greater of the amount which was disbursed by the county from filing fees and/or court costs to the agency or program in the calendar year ended December 31, 1994, or the amount appropriated by ordinance enacted prior to December 31, 1994, or on February 14, 1995, or by Resolution dated February 9, 1995, to the agency or program for the calendar year ending December 31, 1995. . . .
Acts 1995, No. 1256, § 10(b).
With regard to the above-quoted language, you have presented the following question:
 Does section 10(b) of Act 1256 of 1995 require counties to spend only as much as was spent the preceding year, or does this section set a floor on such spending, allowing the county to fund the affected programs above the level of the preceding year, if authorized to do so by the quorum court?
You have indicated that your particular concern is that a new (and fourth) judicial division has been created in the 20th judicial district. This new division does not have a public defender, but the other three divisions do. Public defender programs are among those affected by Act 1256. You have pointed out that if Act 1256 is interpreted to require counties to spend exactly the same amount as was spent the preceding year, the new division will not be able to obtain a public defender, even if the county is willing to provide the additional funding for a public defender.
It is my opinion that section 10(b) of Act 1256 of 1995 creates a floor for spending amounts, rather than a ceiling.
I have reached this conclusion by applying various of the Arkansas Supreme Court's rules of statutory interpretation. First, I have applied the rule which states that in the absence of an ambiguity, the words of a statute must be given their commonly understood meanings. See Gibson v.City of Trumann, 311 Ark. 561, 845 S.W.2d 515 (1993). The statutory language about which you have inquired does not, in my opinion, contain any ambiguity. Therefore, giving the words of the act their commonly understood meanings, I find that two phrases in particular indicate that the spending level described in the act is a floor rather than a ceiling. The first phrase is "not less than." The act states that the affected programs and agencies will be funded from the County Administration of Justice Fund at a level "not less than" the greater of certain named amounts from the previous year. Clearly, this phrase indicates that the spending cannot be in an amount smaller than the greater of the two amounts described following the phrase "not less than" (which are the two possible amounts from the previous year). If the legislature had intended the spending level described in section 10(b) of the act to be a ceiling, it would have said that the programs and agencies would be funded at a level "not greater than" the greater of the two named amounts. As written, the language clearly indicates that the amounts to be used from the fund for the various programs and agencies must be at least as much as was spent for that program or agency the previous year. Nothing contained in the language of the act indicates an intent to limit spending to that amount.
The other phrase in section 10(b) which indicates that counties may spend more on these programs and agencies than in the previous year is the phrase "in whole or in part." The act states that the named programs and agencies can be funded "in whole or in part" using monies from the Fund at the spending level described therein (i.e., at least as much as the amount spent in the previous year). That is, the programs and agencies can be partially funded by the Fund. If the spending level described in the act is only part of a program's funding, and that amount is the amount spent in the previous year, it follows that the remainder of its funding will push that amount above the level spent in the previous year. The spending level described in section 10(b) has reference only to the County Administration of Justice Fund; that is, it states only the amount that can be taken from the County Administration of Justice Fund. It does not include amounts contributed by the county.
Another rule of statutory interpretation upon which I have relied in formulating this opinion is the rule which states that the various parts of a statute must be read together in such a way that all parts can be given effect if possible. See, e.g., Omega Tube and Conduit Corp. v.Maples, 312 Ark. 489, 850 S.W.2d 317 (1993). Section 10(d) of Act 1256 of 1995 states:
 Nothing in this act shall prevent the county from funding any additional costs for the administration of justice from other county funds or as disbursed by the county as required and authorized by the 80th General Assembly meeting in regular session.
Acts 1995, No. 1256, § 10(d).
The phrase "additional costs", as used in section 10(d), quoted above, clearly means costs in addition to those provided for in the act. Because the act provides for funding of costs at a certain described level (not less than certain amounts spent in the previous year), it follows that if a county is authorized, under section 10(d), to fund costs in an amount "in addition to" the spending level described in section 10(b), that described spending level will have been treated as a spending floor, not a ceiling. Indeed, if the amount described in section 10(b) were a ceiling, section 10(d) would be in conflict with that ceiling. Accordingly, in order for both section 10(d) and section 10(b) to be given effect, the spending level described in section 10(b) must be interpreted to be a floor.
Finally, I have applied the rule of statutory interpretation under which separate statutes addressing the same subject must be read together, and both given effect if possible. See, e.g., City of Ft. Smith v. Tate,311 Ark. 405, 844 S.W.2d 356 (1993).
The provisions of A.C.A. § 16-87-101 et seq. provide for the operation of public defender offices. A.C.A. § 16-87-107 empowers the county quorum courts to provide for the funding of these offices. These provisions must be read in conjunction with Act 1256 of 1995, and vice versa. If the authorized spending level described in section 10(b) of Act 1256 were interpreted as a ceiling, rather than as a floor, the provisions of A.C.A. § 16-87-107 would be meaningless and without effect. Under that interpretation, the county quorum courts would be unable to provide for separate funding of public defenders. However, if the spending level described in Act 1256 is interpreted to be a floor, the provisions of A.C.A. § 16-87-107 can be valid, meaningful, and effective. Under that interpretation, the county quorum court would be able to provide funding for public defenders in addition to that described in Act 1256 and provided from the County Administration of Justice Fund.
For all of the foregoing reasons, I conclude that the spending level described in Act 1256 of 1995 is a floor rather than a ceiling, and that counties can spend amounts in excess of amounts spent in the preceding year for the programs and agencies named in the act.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh